UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JAMES YOUNG, IRA KUSHNER, MARK GUTH, RICHARD LARSON, MATTHEW SMITH, JAMES MUELLER, BRANDON WARRICK, MICHAEL OSBOURN, DAVID PERRY, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | **Class Action Complaint**  **Demand for Jury Trial** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:15-cv-00197-RLM-SLC |
| MEDICAL INFORMATICS ENGINEERING, INC., | ) ) ) ) | |
| Defendant. | ) | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, James Young, Ira Kushner, Mark Guth, Richard Larson, Matthew Smith, James Mueller, Brandon Warrick, Michael Osbourn, and David Perry by counsel, on behalf of themselves and all others similarly situated, allege:

## NATURE OF THE CASE

1.     Between approximately May 7, 2015 and May 26, 2015, Defendant Medical Informatics Engineering, Inc. ("MIE") was subject to a data breach (the "MIE data breach"), when hackers stole the personal financial and protected health information of numerous individuals whose information was used in a MIE electronic health record. The personal and financial information obtained by the hackers includes name, telephone number, mailing address, username, hashed password, security question and answer, spousal information (name and potentially

date of birth), email address, date of birth, and Social Security number ("PII"). The protected health information obtained by the hackers includes lab results, health insurance policy information, diagnosis, disability code, doctor's name, medical conditions, and child's name and birth statistics ("PHI").

2.     MIE's conduct—failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the breach from ever happening, failing to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' PII and PHI, and failing to provide timely and adequate notice of the MIE data breach—has caused substantial consumer harm and injuries to consumers across the United States.

3.     As a result of the MIE data breach, numerous individuals whose PII and PHI was used in a MIE electronic health record have been exposed to fraud and these individuals have been harmed. The injuries suffered by the proposed Class as a direct result of the MIE data breach include: theft of their PII and PHI; costs associated with the detection and prevention of identity theft and medical identity theft and unauthorized use of their PII and PHI; costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and

annoyance of dealing with all issues resulting from the MIE data breach; the imminent and certainly impending injury flowing from potential fraud and identify theft and medical identity theft posed by their PII and PHI being placed in the hands of hackers; damages to and diminution in value of their PII and PHI entrusted to MIE for the sole purpose of maintaining electronic health records and with the mutual understanding that MIE would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and continued risk to their PII and PHI, which remains in the possession of MIE and which is subject to further breaches so long as MIE fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' data in its possession.

4.     Plaintiffs seek to remedy these harms, and prevent their future occurrence, on behalf of themselves and all similarly situated individuals whose PII and PHI was stolen as a result of the MIE data breach. Plaintiffs assert claims against MIE for violations of state consumer laws, negligence, breach of implied contract, bailment, and unjust enrichment. On behalf of themselves and all similarly situated consumers, Plaintiffs seek to recover damages, including actual and statutory damages, and equitable relief, restitution, disgorgement, costs, and reasonable attorney fees.

**PARTIES**

5.     Plaintiff James Young is domiciled in Indiana and is a citizen of Indiana. Mr. Young received a letter from MIE informing him that his PII and PHI

3

was compromised as a result of the MIE data breach. Mr. Young was harmed by having his PII and PHI compromised.

6.     Plaintiff Ira Kushner is domiciled in Arizona and is a citizen of Arizona. Mr. Kushner received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Kushner was harmed by having his PII and PHI compromised.

7.     Plaintiff Mark Guth is domiciled in Oregon and is a citizen of Oregon. Mr. Guth received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Guth was harmed by having his PII and PHI compromised.

8.     Plaintiff Richard Larson is domiciled in New Mexico and is a citizen of New Mexico. Mr. Larson received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Larson was harmed by having his PII and PHI compromised.

9.     Plaintiff Matthew Smith is domiciled in Michigan and is a citizen of Michigan. Mr. Smith received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Smith was harmed by having his PII and PHI compromised.

10.     Plaintiff James Mueller is domiciled in Virginia and is a citizen of Virginia. Mr. Mueller received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Mueller was harmed by having his PII and PHI compromised.

4

11.     Plaintiff Brandon Warrick is domiciled in Texas and is a citizen of Texas. Mr. Warrick received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Warrick was harmed by having his PII and PHI compromised.

12.     Plaintiff Michael Osbourn is domiciled in Ohio and is a citizen of Ohio. Mr. Osbourn received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Osbourn was harmed by having his PII and PHI compromised.

13.     Plaintiff David Perry is domiciled in Georgia and is a citizen of Georgia. Mr. Perry received a letter from MIE informing him that his PII and PHI was compromised as a result of the MIE data breach. Mr. Perry was harmed by having his PII and PHI compromised.

14.     Plaintiffs would not have given, or not allowed MIE to be given, their PII or PHI had MIE told them that it lacked adequate computer systems and data security practices to safeguard customers' PII and PHI from theft.

15.     Plaintiffs suffered actual injury from having their PII and PHI compromised and stolen in and as a result of the MIE data breach.

16.     Defendant MIE is a citizen of Indiana. MIE is a corporation that is incorporated in Indiana and has its principal place of business in Indiana at 6302 Constitution Drive, Fort Wayne, IN 46804. MIE is a software developer that provides technical solutions targeted to the healthcare industry. Among other

products and services targeted to the healthcare industry, MIE provides an electronic medical record system.

## JURISDICTION & VENUE

17.    This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from the Defendant.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because MIE is headquartered here and regularly transacts business here; and some of the Class members reside in this district. The causes of action for the putative Class Members also arose, in part, in this district.

## CLASS ACTION ALLEGATIONS

19.    Plaintiffs bring all claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are met with respect to the Class defined below.

20.    The Plaintiff Class consists of all persons whose PII or PHI was compromised by the MIE data breach ("Nationwide Class").

21.    Alternatively, Plaintiffs propose the following subclasses by state or groups of states: "All persons in [NAME OF STATE(S)] whose PII or PHI was compromised by the MIE data breach" ("Statewide Class").

6

22.     The Class is so numerous that joinder of all members is impracticable. The Class includes approximately 4 million individuals whose PII and PHI was compromised by the MIE data breach.

23.     There are numerous questions of law and fact common to Plaintiffs and the Class, including the following:

- whether MIE engaged in the wrongful conduct alleged herein;

- whether MIE's conduct was deceptive, unfair, unconscionable and/or unlawful;

- whether MIE owed a duty to Plaintiffs and members of the Class to adequately protect their PII and PHI and to provide timely and accurate notice of the MIE data breach to Plaintiffs and members of the Class;

- whether MIE breached its duties to protect the PII and PHI of Plaintiffs and members of the Class by failing to provide adequate data security and whether MIE breached its duty to provide timely and accurate notice to Plaintiffs and members of the Class;

- whether MIE knew or should have known that its computer systems were vulnerable to attack;

- whether MIE's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII and PHI;

- whether MIE unlawfully failed to inform Plaintiffs and members of the Class that it did not maintain computers and security practices adequate to

7

reasonably safeguard PII and PHI and whether MIE failed to inform Plaintiffs and members of the Class of the data breach in a timely and accurate manner;

- whether Plaintiffs and members of the Class suffered injury, including ascertainable losses, as a result of MIE's conduct (or failure to act);

- whether Plaintiffs and members of the Class are entitled to recover damages;

- whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

24.     Plaintiffs' claims are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, had their PII and PHI compromised in the MIE data breach.

25.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel who is experienced in class-action and complex litigation. Plaintiffs have no interests that are adverse to, or in conflict with, other members of the Class.

26.     The questions of law and fact common to the Class Members predominate over any questions which may affect only individual members.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would likely find the cost of

8

litigating their claims prohibitively high and would therefore have no effective remedy.

28.     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for MIE. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## FACTS

## I.     The Healthcare Industry is Put on Notice of Cyber Attacks

29.     Companies that provide electronic health record services to the healthcare industry, like MIE, have an obligation to maintain the security of individuals' PII and PHI, which MIE itself recognizes in its Privacy Policy on its website, http://www.mieweb.com/privacy (last visited July 29, 2015):

> Effective Date: February 18, 2010
>
> At Medical Informatics Engineering (MIE), protecting your privacy is of the utmost importance. Information furnished by you to us will be treated with the greatest respect and in accordance with this Privacy Policy. Please find below details about our practices for handling and securing your personal information. In this policy, "personal information" refers to names, home and office contact information and any other "information relating to an identified or identifiable natural person."
>
> . . . This privacy policy applies collectively to MIE's security practices and to all data collected by, used by or exchanged among any of the MIE's legal entities. . . .

9

WHAT INFORMATION DO WE COLLECT?

. . .

2.   Personal Information Collection

Medical Informatics Engineering may ask for personal or business information in order to assist us in meeting your various needs, including:

o        providing products or services requested;
o        servicing your account;
o        improving our services; and
o        developing and/or informing you of additional products or services that may be of interest

Information sought by Medical Informatics Engineering may depend on the product or service requested. As a result, Medical Informatics Engineering may request personal information including name, street address, ZIP Code, telephone number, fax number, email address, and area of practice or degree (if applicable). Medical Informatics Engineering may collect other personal information through comments, feedback, participation in surveys, or other requests for information.

Further personal information may be required during the application and underwriting process. That information may include, among other things, claim payments, loss history or other underwriting information, credit card numbers, bank account information or social security numbers. In certain circumstances, we may require information primarily used for individual, family or household purposes.

. . .

WHAT INFORMATION DO WE SHARE AND WITH WHOM DO WE SHARE IT?

Medical Informatics Engineering may share personal information with our affiliated companies and third parties for the purpose of fulfilling your requests, or to offer you other products and services that may be of interest to you. Medical Informatics Engineering may or may not receive compensation for sharing such information in this manner. Medical Informatics Engineering reserves the right to use this information and to disclose it to others to the extent permitted or required by law, to investigate potential wrongdoing, or to protect the rights, property or safety of Medical Informatics Engineering or others.

10

. . .

HOW IS YOUR INFORMATION SECURED AND PROTECTED?

Medical Informatics Engineering uses encryption and authentication
tools (password and user identification) to protect your personal
information. However, emails sent via the Site may not be secure
during transmission. If your communication is very sensitive, or
includes highly confidential information such as a credit card number
or premium or loss information, you may want to send it by regular
mail or verify that encryption is used.
Our employees are aware that certain information provided by our
customers is confidential and is to be protected. Employees who misuse
customer information are subject to disciplinary action.

. . .

30.    The New York Times reports that "[t]he threat of a hacking is
particularly acute in the health care and financial services industry, where
companies routinely keep the most sensitive personal information about their
customers on large databases." (http://www.nytimes.com/2015/02/05/business/
hackers-breached-data-of-millions-insurer-says.html (last visited Feb. 5, 2015).)

31.    Indeed, on April 8, 2014, the FBI's Cyber Division issued a public
Private Industry Notification titled "Health Care Systems and Medical Devices at
Risk for Increased Cyber Intrusions for Financial Gain." The notification specifically
cautioned that "[c]yber actors will likely increase cyber intrusions against health
care systems . . . due to . . . lax cybersecurity standards, and a higher financial
payout for medical records in the black market."

32.    The FBI cited a report issued in February 2014 by SANS, a leading
computer forensics and security firm, warning:

11

Health care security strategies and practices are poorly protected and ill-equipped to handle new cyber threats exposing patient medical records, billing and payment organizations, and intellectual property. . . . The biggest vulnerability was the perception of IT health care professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise.

33. By early 2014 computer breaches had become rampant in the healthcare industry, a fact widely disseminated inside and outside the healthcare sector. For example:

- According to a Ponemon Institute report dated March 2013, 63% of the healthcare organizations surveyed reported a data breach during the previous two years. The majority of these breaches resulted in the theft of data. In a March 2014 report, the institute stated that criminal attacks on healthcare companies have increased 100% since 2010.

- An EMC²/RSA White Paper published in 2013 indicated that during the first half of 2013, more than two million healthcare records were compromised, which was 31% of all reported data breaches.

- According to the Identity Theft Resource Center, nearly half of all data breaches so far in 2014 have taken place in the healthcare sector.

- According to a recent analysis of HHS data by the *Washington Post*'s "Wonkblog," the personal data of about 30.1 million people has been affected by 944 recorded "major" health data breaches (defined by HHS as one affecting at least 500 people) since federal reporting requirements under the 2009 economic stimulus package went into effect. This analysis did not include the CHS breach.

- In early 2015, Anthem and was the victim of a data breach that affected nearly 80 million individuals.

- In early 2015, Premera Blue Cross was also the victim of a data breach.

34. Several other studies have shown the healthcare industry to be one of the most affected by and least prepared to deal with hacking attempts. Despite the

12

growing threat, the healthcare industry has been slow to implement improved security measures – slower than other industries handling sensitive information, such as the retail and financial sectors. For instance, the typical healthcare entity allocates only about 2 or 3 percent of its operating budget to its IT department, while retail and financial businesses devote more than 20 percent to IT. According to an annual security assessment conducted by the Healthcare Information and Management Systems Society, almost half of surveyed health systems said they spent 3 percent or less of their IT budgets on security.

## II.   The MIE Data Breach

35.   On June 10, 2015, MIE announced that it was the victim of a "data security compromise that has affected the security of some personal and protected health information relating to certain clients and individuals who have used a Medical Informatics Engineering electronic health record." (http://www.mieweb.com /notice/ (last visited July 29, 2015).)

36.   On July 23, 2015, MIE provided additional information about the MIE data breach:

> On May 26, 2015, we discovered suspicious activity in one of our servers. We immediately began an investigation to identify and remediate any identified security vulnerability. Our first priority was to safeguard the security of personal and protected health information, and we have been working with a team of third-party experts to investigate the attack and enhance data security and protection. This investigation is ongoing. On May 26, 2015, we also reported this incident to law enforcement including the FBI Cyber Squad. Law enforcement is actively investigating this matter, and we are cooperating fully with law enforcement's investigation. The investigation indicates this is a sophisticated cyber attack. Our

13

forensic investigation indicates the unauthorized access to our network began on May 7, 2015. Our monitoring systems helped us detect this unauthorized access, and we were able to shut down the attackers as they attempted to access client data.

We are continuing to take steps to remediate and enhance the security of our systems. Remedial efforts include removing the capabilities used by the intruder to gain unauthorized access to the affected systems, enhancing and strengthening password rules and storage mechanisms, increased active monitoring of the affected systems, and intelligence exchange with law enforcement. We have also instituted a universal password reset.

(http://www.mieweb.com /notice/ (last visited July 29, 2015).)

37.     MIE's website then stated that "[w]hile investigations into this incident are ongoing," thus far it has been "determined the security of some personal and protected health information contained on Medical Informatics Engineering's network has been affected. The affected data relating to individuals affiliated with affected Medical Informatics Engineering clients may include an individual's name, telephone number, mailing address, username, hashed password, security question and answer, spousal information (name and potentially date of birth), email address, date of birth, Social Security number, lab results, health insurance policy information, diagnosis, disability code, doctor's name, medical conditions, and child's name and birth statistics." (http://www.mieweb.com/ notice/ (last visited July 29, 2015).)

38.     MIE notified the FBI of the breach and the FBI is investigating.

39.     MIE detected the breach on May 26, 2015, but did not publicly announce the breach until June 10, 2015.

14

40.     MIE did not start mailing notification to affected individuals until July 17, 2015.

41.     MIE's website states that "[t]he following healthcare providers were affected by the Medical Informatics Engineering cyber attack":

- Concentra

- Allied Physicians, Inc. d/b/a Fort Wayne Neurological Center (including Neurology, Physical Medicine and Neurosurgery)

- Franciscan St. Francis Health Indianapolis

- Gynecology Center, Inc. Fort Wayne

- Rochester Medical Group

- RediMed

- Fort Wayne Radiology Association, LLC including d/b/a Nuvena Vein Center and Dexa Diagnostics

- Open View MRI, LLC

- Breast Diagnostic Center, LLC

- P.E.T. Imaging Services, LLC

- MRI Center — Fort Wayne Radiology, Inc. (f/k/a Advanced Imaging Systems, Inc.)

42.     MIE's website also states that "[i]ndividuals who received services from Fort Wayne Radiology Association, Open View, Breast Diagnostic Center, PET Imaging or MRI Center during the period of time from January 1, 1997 to May 26, 2015 may be affected. The database relating to these healthcare providers was

15

accessed on May 26, 2015. Individuals may also visit the providers' websites, which may be accessed at www.fwradiology.com, for information on this incident."

43.    MIE's website also states that "[a]ffected individuals may include, along with potential others, individuals who received radiology services during this time at any of the organizations identified below:

| | |
|---|---|
| Accustat Medical Lab, Inc. | Indianapolis, IN |
| Allergy & Asthma Center | Fort Wayne, IN |
| Associated Physicians & Surgeons Clinic, LLC | Terre Haute, IN |
| Ball Memorial Hospital | Muncie, IN |
| Bedford Regional Medical Center | Bedford, IN |
| Cameron Memorial Community Hospital | Angola, IN |
| Central Indiana Orthopedics, PC | Muncie, IN |
| Community Memorial Hospital | Hicksville, OH |
| Ear, Nose & Throat Associates | Fort Wayne, IN |
| Family Medicine Associates, Jerry Sell, M.D. | Rockford, OH |
| First Care Family Physicians | Fort Wayne, IN |
| Fort Wayne Medical Oncology & Hematology | Fort Wayne, IN |
| Gary Pitts, M.D. | Warsaw, IN |
| Indiana Urgent Care Centers, LLC | Indianapolis, IN |
| Indiana University Health Center | Bloomington, IN |
| Jasper County Hospital | Rensselaer, IN |
| Manchester Family Physicians | North Manchester, IN |
| MedCorp | Toledo, OH |
| Meridian Health Group | Carmel, IN |
| Nationwide Mobile Imaging | Fort Wayne, IN |
| Neighborhood Health Clinic | Fort Wayne, IN |
| Orthopaedics Northeast | Fort Wayne, IN |
| Parkview Regional Medical Center | Fort Wayne, IN |
| Parkview Hospital | Fort Wayne, IN |
| Parkview Ortho Hospital | Fort Wayne, IN |
| Parkview Heart Institute | Fort Wayne, IN |
| Parkview Women & Children's Hospital | Fort Wayne, IN |

| | |
|---|---|
| Parkview Noble Hospital | Kendallville, IN |
| Parkview Huntington Hospital | Huntington, IN |
| Parkview Whitley Hospital | Columbia City, IN |
| Parkview LaGrange Hospital | LaGrange, IN |
| Parkview Physicians Group | |
| Parkview Occupational Health Centers | |
| Paulding County Hospital | Paulding, OH |
| Prompt Care Express | Coldwater, MI; Sturgis, MI |
| Public Safety Medical Services | Indianapolis, IN |
| Purdue University Health Center | W. Lafayette, IN |
| Southwestern Medical Clinics | Berrien Springs, MI |
| Tri-State Medical Imaging | Angola, Indiana |
| Union Associated Physicians Clinic | Terre Haute, IN |
| U.S. Healthworks Medical Group of Indiana | Elkhart, IN |
| Van Wert County Hospital | Van Wert, OH |
| Wabash County Hospital | Wabash, IN |
| Wabash Family Care | Wabash, IN |

44.     MIE's website also provides "[f]raud prevention tips" that show just

how damaging the MIE data beach is to class members:

> We suggest affected individuals remain vigilant and seek to protect
> against possible identity theft or other financial loss by regularly
> reviewing their financial account statements for suspicious activity.
> We also encourage affected individuals to notify their credit card
> companies, health care providers, and heath care insurers of this data
> security incident. Affected individuals may also review explanation of
> benefits statement(s) that they receive from their healthcare provider
> or health plan. If an affected individual sees any service that he/she
> believes he/she did not receive, the individual should contact his/her
> health care provider or health plan at the telephone number listed on
> the explanation of benefits statement(s). If an affected individual does
> not receive regular explanation of benefits statement(s), we suggest
> he/she contact his/her healthcare provider or health plan and ask that
> they send a copy after each visit the affected individual makes with
> his/her health care provider.

We also suggest that affected individuals carefully review their credit reports. Under U.S. law, individuals are entitled to one free credit report annually from each of the three major credit bureaus. To obtain a free credit report, visit www.annualcreditreport.com or call, toll-free, (877) 322-8228.

At no charge, individuals can also have these credit bureaus place a "fraud alert" on their file that alerts creditors to take additional steps to verify the his/her identity prior to granting credit in his/her name. Please note, however, that because it tells creditors to follow certain procedures to protect an individual's credit, it may also delay the ability to obtain credit while the agency verifies the individual's identity.

(http://www.mieweb.com/notice/ (last visited July 29, 2015).)

## COUNT I – NEGLIGENCE
## ON BEHALF OF THE NATIONWIDE CLASS,
## OR ALTERNATIVELY, THE STATEWIDE CLASSES

45.     Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

46.     MIE owed a duty to Plaintiffs and members of the Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. This duty included, among other things, designing, maintaining, and testing MIE's security systems to ensure that Plaintiffs' and Class members' PII and PHI in MIE's possession was adequately secured and protected. MIE further owed a duty to Plaintiffs and Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts.

18

47.     MIE owed a duty, as articulated in in its own Privacy Policy, to protect its customers' PII and PHI.

48.     MIE owed a duty to timely disclose the material fact that MIE's computer systems and data security practices were inadequate to safeguard individuals' PII and PHI.

49.     MIE breached these duties by the conduct alleged in the Complaint by, including without limitation, (a) failing to protect its customers' PII and PHI; (b) failing to maintain adequate computer systems and data security practices to safeguard customers' PII and PHI; (c) failing to disclose the material fact that MIE's computer systems and data security practices were inadequate to safeguard customers' PII and PHI; and (d) failing to disclose in a timely and accurate manner to Plaintiffs and members of the Class the material fact of the MIE data breach.

50.     The conduct alleged in the Complaint caused Plaintiffs and Class members to be exposed to fraud and be harmed. The injuries suffered by the Plaintiffs and the proposed Class as a direct result of the MIE data breach include: theft of their PII and PHI; costs associated with the detection and prevention of identity theft and medical identity theft and unauthorized use of their financial accounts and medical identity; costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits

on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the MIE data breach; the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII and PHI being placed in the hands of hackers; damages to and diminution in value of their PII and PHI entrusted to MIE with the mutual understanding that MIE would safeguard Plaintiffs' and Class members' data against theft and not allow access and misuse of their data by others; and continued risk to their PII and PHI, which remains in the possession of MIE and which is subject to further breaches so long as MIE fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' data in its possession.

### COUNT II – BREACH OF IMPLIED CONTRACT ON BEHALF OF THE NATIONWIDE CLASS, OR ALTERNATIVELY, THE STATEWIDE CLASSES

51.    Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

52.    When Plaintiffs and members of the Class provided their PII and PHI to MIE, Plaintiffs and members of the Class entered into implied contracts with MIE pursuant to which MIE agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class members that their data had been breached and compromised.

53.    Plaintiffs and Class members would not have provided and entrusted their PII and PHI to MIE in the absence of the implied contract between them and MIE.

54.    Plaintiffs and members of the Class fully performed their obligations under the implied contracts with MIE.

55.    MIE breached the implied contracts it made with Plaintiffs and Class members by failing to safeguard and protect the PII and PHI of Plaintiff and members of the Class and by failing to provide timely and accurate notice to them that their PII and PHI was compromised in and as a result of MIE data breach.

56.    The losses and damages sustained by Plaintiffs and Class members as described herein were the direct and proximate result of MIE's breaches of the implied contracts between MIE and Plaintiffs and members of the Class.

## COUNT III – BREACH OF CONTRACT ON BEHALF OF THE NATIONWIDE CLASS, OR ALTERNATIVELY, THE STATEWIDE CLASSES

57.    Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

58.    MIE has a contractual obligation to maintain the security of its customers' PII and PHI, which MIE itself recognizes in its Privacy Policy.

59.    MIE breached that contractual obligation by failing to safeguard and protect the PII and PHI of Plaintiffs and members of the Class and by failing to provide timely and accurate notice to them that their PII and PHI was compromised in and as a result of MIE data breach.

60.    The losses and damages sustained by Plaintiffs and Class members as described herein were the direct and proximate result of MIE's breaches of the contracts between MIE and Plaintiffs and members of the Class.

## COUNT IV – BAILMENT ON BEHALF OF THE NATIONWIDE CLASS, OR ALTERNATIVELY, THE STATEWIDE CLASSES

61.     Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

62.     In having their PII and PHI delivered to MIE for the purposes of electronic health records, Plaintiffs and Class members intended and understood that MIE would adequately safeguard their personal and financial information.

63.     MIE accepted possession of Plaintiffs' and Class members' PII and PHI for the purpose of providing electronic health record services.

64.     By accepting possession of Plaintiffs' and Class members' PII and PHI, MIE understood that Plaintiffs and Class members expected MIE to adequately safeguard their PII and PHI. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

65.     During the bailment (or deposit), MIE owed a duty to Plaintiffs and Class members to exercise reasonable care, diligence, and prudence in protecting their PII and PHI.

66.     MIE breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' PII and PHI, resulting in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class members' PII and PHI.

22

67.     MIE further breached its duty to safeguard Plaintiffs' and Class members' PII and PHI by failing to timely and accurately notify them that their information had been compromised as a result of the MIE data breach.

## COUNT V – UNJUST ENRICHMENT ON BEHALF OF THE NATIONWIDE CLASS, OR ALTERNATIVELY, THE STATEWIDE CLASSES

68.     Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

69.     Plaintiffs and Class members conferred a benefit on MIE by way of customers' paying MIE to maintain Plaintiffs and Class members' PII and PHI.

70.     The monies paid to MIE were supposed to be used by MIE, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiffs and Class members.

71.     MIE failed to provide reasonable security, safeguards, and protections to the PII and PHI of Plaintiffs and Class members, and as a result MIE was overpaid.

72.     Under principles of equity and good conscience, MIE should not be permitted to retain the money because MIE failed to provide adequate safeguards and security measures to protect Plaintiffs' and Class members' PII and PHI that they paid for but did not receive.

73.     MIE wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

74.     MIE's enrichment at the expense of Plaintiffs and Class Members is and was unjust.

75.     As a result of MIE's wrongful conduct, as alleged above, Plaintiffs and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by MIE, plus attorneys' fees, costs, and interest thereon.

## COUNT VI – VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT ON BEHALF OF THE NATIONWIDE CLASS

76.     Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

77.     MIE's conduct as alleged in this Complaint violated Ind. Code § 24-5-0.5-3(b)(1), (2), including without limitation that (a) MIE represented that it protected its customers' PII and PHI, but MIE failed to protect that information; (b) MIE's failure to maintain adequate computer systems and data security practices to safeguard customers' PII and PHI; (c) MIE's failure to disclose the material fact that MIE's computer systems and data security practices were inadequate to safeguard customers' PII and PHI from theft; and (d) MIE's failure to disclose in a timely and accurate manner to Plaintiff and members of the Class the material fact of the MIE data breach.

78.     Plaintiffs and Class members relied on MIE's misrepresentations.

79.     MIE's deceptive acts were done as part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under Ind. Code § 24-5-0.5-1 *et seq.*

80.     Plaintiffs and Class members are entitled to $1,000 or treble damages, reasonable attorneys' fees, costs of suit, an ordering enjoining MIE's unlawful practices, and any other relief which the Court deems proper.

## COUNT VII - VIOLATION OF STATE CONSUMER LAWS ON BEHALF OF THE STATEWIDE CLASSES

81.     Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

82.     Plaintiffs and Class members are consumers whose interaction with MIE was primarily for personal, family, or household purposes.

83.     MIE engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiffs and members of the Class.

84.     MIE is engaged in, and its acts and omissions affect, trade and commerce. MIE's acts, practices, and omissions were done in the course of MIE's business of marketing, offering for sale, and selling goods and services throughout the United States, including in Indiana.

85.     MIE's conduct as alleged in this Complaint, including without limitation that (a) MIE represented that it protected its customers' PII and PHI, but MIE failed to protect that information; (b) MIE failed to maintain adequate computer systems and data security practices to safeguard customers' PII and PHI; (c) MIE failed to disclose the material fact that MIE's computer systems and data security practices were inadequate to safeguard customers' PII and PHI from theft;

25

and (d) MIE failed to disclose in a timely and accurate manner to Plaintiffs and members of the Class the material fact of the MIE data breach, constitutes unfair methods of competition and unfair, deceptive, unconscionable, fraudulent, and/or unlawful acts or practices.

86.     By engaging in such conduct and omissions of material facts, MIE has violated state consumer law prohibiting representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," representing that "goods and services are of a particular standard, quality or grade, if they are of another," and/or "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;" and state consumer protection laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent, and/or unlawful acts or practices.

87.     The Plaintiffs and Class members suffered damages, ascertainable losses and injuries, including to their money and property, as a direct result of MIE's unfair methods of competition, unfair, deceptive, unconscionable, fraudulent, and/or unlawful acts or practices.

88.     MIE's conduct described in this Complaint violates the following state consumer statutes:

a.  The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

b.  The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (5) and (7) *et seq.*;

26

c.   The Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e), (s) and (cc), et seq.;

d.   The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, et seq.;

e.   The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A) and (B)(1) and (2) *et seq.* Pursuant to Ohio Rev. Code Ann. § 1345.09(B), MIE's alleged acts must have been previously declared to be deceptive or unconscionable under Ohio Rev. Code Ann. §§ 1345.02 or 1345.03. As alleged in the Complaint, MIE omitted material disclosures that it did not have adequate security to safeguard customers' PII and PHI; did not timely notify consumers of the data breach; and did not timely act when notified of suspicious activity on its computer systems. Ohio courts have previously declared such actions to be deceptive or unconscionable under §§ 1345.02 or 1345.03.

f.   The Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608(1)(e)(g) and (u), et seq.;

g.   The Texas Deceptive Trade Practices- Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), et seq.; and

h.   The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5)(6) and (14), et seq.

89.     Plaintiffs and Class members are entitled to damages, reasonable attorneys' fees, costs of suit, an order enjoining MIE's unlawful practices, and any other relief which the Court deems proper.

## COUNT VIII - VIOLATION OF STATE DATA BREACH STATUTES ON BEHALF OF THE STATEWIDE CLASSES

90.     Plaintiffs incorporate by reference those paragraphs set out above as if fully set forth herein.

91.     Legislatures in the states and jurisdictions listed below have enacted data breach statutes. These statutes generally require that any person or business conducting business within the state that owns or licenses computerized data that includes PII or PHI shall disclose any breach of the security of the system to any resident of the state whose personal information was acquired by an unauthorized person, and further require that the disclosure of the breach be made in the most expedient time possible and without unreasonable delay.

92.     The MIE data breach constituted a breach of the security system of MIE within the meaning of the below state data breach statutes and the data breached was protected and covered by the below data breach statutes.

93.     MIE unreasonably delayed in informing the public, including the Plaintiffs and the Class members about the breach of the security of Plaintiffs' and Class members' PII and PHI after MIE knew or should have known that the data breach had occurred.

94.     MIE failed to disclose to Plaintiffs and Class members without unreasonable delay and in the most expedient time possible, the breach of security of Plaintiffs' and Class members' PII and PHI when MIE knew or reasonably believed such information had been compromised.

95.     Had MIE provided timely and accurate notice, Plaintiffs and Class members could have avoided or mitigated the harm caused by the MIE data breach. For example, they could have taken earlier security precautions in time to prevent or minimize identity theft.

96.     MIE's failure to provide timely and accurate notice of the MIE data breach violated the following state data breach statutes:

a.  Ga. Code Ann. § 10-1-912(a), *et seq*.;

b.  Or. Rev. Stat. Ann. § 646A.604(1), *et seq*.;

c.  Mich. Comp. Laws Ann. § 445.72(1), *et seq*.;

d.  Va. Code. Ann. § 18.2-186.6(B), *et seq*.; and

e.  Tex. Bus. & Com. Code Ann. § 521.053(b), *et seq*.

97.     Plaintiffs and members of each of the Statewide Classes seek all remedies available under their respective state data breach statutes, including but not limited to a) damages suffered by Plaintiffs and Class members as alleged above, b) equitable relief, including injunctive relief, and c) reasonable attorneys' fees and costs, as provided by law.

**RELIEF REQUESTED**

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against MIE, as follows:

1.      An award to Plaintiffs and the Class of compensatory, direct, consequential, statutory, and incidental damages;

2.      An award of attorneys' fees, costs, and expenses, as provided by law, or equity, or as otherwise available;

3.      An award of pre-judgment and post-judgment interest, as provided by law or equity; and

4.      Such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  August 14, 2015        Respectfully submitted,

/s/ Irwin B. Levin

Irwin B. Levin, No. 8786-49
Richard E. Shevitz, No. 12007-49
Vess A. Miller, No. 26495-53
Lynn A. Toops, No. 26386-49A
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
vmiller@cohenandmalad.com
ltoops@cohenandmalad.com

Mark E. GiaQuinta, No. 7119-02
Holly A. Brady, No. 18227-02A
HALLER & COLVIN, P.C.
444 East Main Street
Fort Wayne, IN 46802
Telephone: (260) 426-0444
Fax: (260) 422-0274
mgiaquinta@hallercolvin.com
hbrady@hallercolvin.com

*Counsel for Plaintiffs and the*
*Proposed Plaintiff Class*